In the Matter of: Milton L. NICHOLS and Brenda B. Nichols, debtors, and Anita Denise Edson, Debtor, and Gerald L. Manning, Sr., Debtor.

Robert I. LEECH, Trustee/Plaintiff,

v.

Milton L. NICHOLS and Brenda B. Nichols, Defendants.

Robert I. LEECH, Trustee/Plaintiff,

v.

Anita Denise EDSON, Defendant.

Robert I. LEECH, Trustee/Plaintiff,

v.

Gerald L. MANNING, Sr., Defendant.

Bankruptcy Nos. 79–00573, 79–00583 and 79–00586.

Adv. Nos. 79–0005, 79–0004 and 79–003.

United States Bankruptcy Court, E. D. Michigan, S. D.

June 25, 1980.

Robert I. Leech, Flint, Mich., for plaintiff.

Roger W. Kittendorf, Mount Morris, Mich., for defendants Nichols.

William Goldberg, Flint, Mich., for defendants Edson and Manning.

Carl L. Bekofske, Flint, Mich., Brian I. Brown, Burton, Mich., amicus curiae.

## OPINION

HAROLD H. BOBIER, Bankruptcy Judge.

These three cases, consolidated for the purposes of the trial of a common issue, raise the question as to whether or not the debtors are entitled to claim as exempt property, under 11 U.S.C. § 522, wage hold-

backs and income tax refunds. The position of the trustee is that the answer should be to the negative. The debtors each assert a contrary position. For the reasons outlined below, and with the limitations stated, the court is of the opinion that the position of the debtors is the correct one.

## FINDINGS OF FACT

Defendants Nichols and Edson filed for relief under Chapter 7 of the Bankruptcy Code on October 9, 1979. Defendant Manning filed his petition on October 10, 1979. All are residents of, and domiciled in Michigan. Robert I. Leech, plaintiff herein, was appointed interim trustee at the time the petitions were filed. On November 20, 1979 at the section 341 hearing Leech was confirmed as trustee of all the above estates.

All of the defendants claimed as exempt property wages withheld by employers and/or income tax refunds. Since the initiation of the instant proceedings, defendants Nichols and Manning have amended their claim of exemptions on the B–4 schedules. These amendments are of no direct import in the consideration of this litigation.

On November 29, 1979 the trustee filed complaints to deny exemptions and for judgment in each of these cases. In his complaint, the trustee

> "objects to the allowance of exemption for wages and income tax refunds for the reason that the same are not personal property as contemplated by the statute and not exempt under [11] U.S.C.A. 522(d)(5) and for the further reason that the same is not specific in amount and exceeds the statutory amount allowable."

Tr. Complaint ¶ II.

In each case, the debtors have elected the Federal bankruptcy exemptions, as found in 11 U.S.C. § 522(d). The debtors in these cases either owned no real estate which could be claimed as exempt, or the equity in the homestead was less than $7,500.00. By their claim of exempt property on the B–4 schedule, each debtor is attempting to apply any unused portion of the $7,500.00 to other property under § 522(d)(5).

Under prior law, the Bankruptcy Act of 1898, as amended, the question presented to the court today would be easily resolved. Section 6 of the Act looked to the law of the state where the bankrupt was domiciled. Under Michigan law there is no exemption for wage holdbacks or income tax refunds. See Mich.Comp.L.Ann. § 600.6023 (1968); Mich.Stat.Ann. § 27A.6023 (1977). Consequently, wage holdbacks and income tax refunds, under the former Act, would have been property of the bankruptcy estate not subject to exemptions. See *Segal v. Rochelle*, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966); *Fournier v. Rosenblum*, 318 F.2d 525 (1st Cir. 1963).

The instant controversy has been submitted to the court due, in part at least, to the radical changes which the debtors submit were worked by virtue of the promulgation of P.L. 95–598, which enacted a new title 11 of the United States Code, commonly referred to as the Bankruptcy Code.

### Issues

Are wage holdbacks and income tax refunds property of a debtor's estate? If so, may a debtor claim as exempt property under 11 U.S.C. § 522(d)(5) wage holdbacks and income tax refunds? If so, to what extent may this property be exempted?

## FINDINGS OF LAW

*What is the Property of the Estate?*

Although counsel for one of the defendants conceded at trial that the subject assets were property of the estate, the question has been raised in the briefs which have been submitted. And in order to reach the question of the exemptions, the preliminary question of property of the estate must be resolved.

The threshold question to be resolved concerns whether or not income tax refunds and wage withholdings are property of a debtor's estate. Since the filing of a petition for relief under title 11 of the United States Code operates to create an estate, and since this estate is comprised of all property or property interests of the

debtor of a legal or equitable nature, whether tangible or intangible, wherever located (with few stated exceptions) it is abundantly clear to this court that tax refunds and wage withholdings are part of the debtor's estate. *See* 11 U.S.C.A. § 541 (1979).

The legislative history of this section is clear that the result of *Segal v. Rochelle, supra,* is adopted by § 541 at least in so far as the right to a tax refund is property of the estate. H.R.Rep.No.95–595, 95 Cong., 1st Sess., 367, U.S.Code Cong. & Admin. News 1978, p. 5787. The House Report is also clear that § 541 has made a drastic change in the law in that the holding in *Lockwood v. Exchange Bank,* 190 U.S. 294, 23 S.Ct. 751, 47 L.Ed. 1061 (1903), which held that title to exempt property remained in the bankrupt and was not subject to administration by the trustee or bankruptcy court, has been overruled. Also overruled is the case of *Lines v. Frederick,* 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970), which held that the estate did not include accrued, but unpaid, vacation pay of the bankrupt. H.R.Rep.No.95–595, at 368. The import of section 541, as viewed in the light of its legislative history, is to create an estate which is much broader than that which was found under prior law (the "Act"). This is but one of the many major changes brought about by the Code.

The conclusion that the debtor's estate under the Code encompasses much more than that under the Act also finds support when the jurisdictional grant of the Bankruptcy Court is considered. Under the Act, jurisdiction was circumscribed to a large extent by the requirement that some matters be tried in forums other than the bankruptcy court. Bankruptcy Act § 23, former 11 U.S.C. § 46. *Cf.,* § 2 of the Act, former 11 U.S.C. § 11. The new law, however, does not so hamstring the court. As found in 28 U.S.C. § 1471(a) and (c) (Supp.1980) the district court has "original and exclusive jurisdiction of all cases under title 11", which jurisdiction is exercised by the bankruptcy court.

From the foregoing discussion it is evident to this court, and we so hold, that income tax refunds, wage withholdings, accrued vacation pay as well as other items not formerly considered to be part of a debtor's estate are now so by virtue of the "dragnet" clause of the Code. The court is cognizant of the fact that with respect to particular items this may mean a drastic change from prior law. But as was recently stated by the bankruptcy court, *en banc* for the District of Maryland

"The approach with respect to the creation of the estate is significantly different under the Code than it was under the Act. Section 70(a) of the Act is a statute of inclusion, whereas § 541(a) of the Code is a statute of exclusion. Section 70(a) creates the estate in bankruptcy under the Act and proceeds to explicitly list the property which will fall [sic] into the estate and the extent to which that property is includable within the estate. The definition of what is to be included in the estate under the Code, on the contrary, is extremely broad with only two exclusions. . . . These provisions demonstrate that when Congress intended to exclude property from the estate, it carefully indicated this intention." *In re Ford, Jr.,* 3 Bkrtcy 559, 568–569, 6 B.C.D. 202, 206; Bankr.L.Rep. (CCH) ¶ 67, 429, at 77,733–34 (D.Md.1980).

This court is in full accord with the holding in the *Ford* case. Although the question being considered in *Ford* related to entireties property as part of the estate, the court believes that the discussion of the scope of the debtor's estate to be the correct application of the law. If there was Congressional intent to exclude tax refunds and wage withholdings from the estate, this would have been expressly stated.

*May a debtor claim as exempt property wage holdbacks and tax refunds?*

■ In each of these cases the debtors have elected the so-called "Federal" exemptions. These are found in 11 U.S.C.A. § 522 (1979). Under § 522(b), debtors have a choice between the schedule of exempt property contained in the Code, § 522(d),

only (unless the State legislature has specifically rejected this choice), or the alternative of the exempt property found in State law and in Federal nonbankruptcy law. As far as the exempt property available to a Michigan debtor, the Federal bankruptcy exemptions found in § 522(d) are more generous than that which is available under State law.

Section 522(d) list eleven categories of Federal exemptions. The list includes: homestead; motor vehicles; personal property; jewelry; professional or trade materials; life insurance contracts; loan values on insurance; health aids; benefits, including social security, unemployment, disability and the like; compensation for losses; and a general exemption. It is the nature and scope of this "general exemption", which has been referred to as a "wild card" exemption, which trustee/plaintiff is contesting.

In order to consider the scope of the exemption, its nature must first be understood. As discussed above, upon the filing of a petition for relief, an estate consisting of all property of any kind of the debtor is created. § 541. While the estate is administered by the trustee, the debtor is permitted to "exempt" certain items. § 522. Exempted property expresses the Congressional determination of what it deems necessary to support the "fresh start" theory. Bkr.L. Ed., Code Commentary and Analysis § 22:6, at 14 (1979). Or, as is stated in Colliers:

"The Code, like [earlier versions of the bankruptcy law], provides a list of exemptions and allows the debtor to take advantage of more liberal state exemptions. The federal alternative exempts property of the debtor which is generally recognized as necessary for ordinary life, and a so-called 'grubstake' exemption— that is, a dollar amount also considered necessary to aid in the support of the debtor." 3 Collier on Bankruptcy ¶ 522.-02, at 522–10 (15th ed. 1979).

As stated in § 522:

"(d) The following property may be exempted under subsection (b)(1) of this section:

. . . . .

(5) The debtor's aggregate interest, not to exceed in value $400 plus any unused amount of the exemption provided under paragraph (1) of this subsection [the homestead exemption], *in any property*." Emphasis supplied. 11 U.S.C.A. § 522(d)(5) (1979).

The position of the trustee is that when § 522(d)(5) is read in the light of § 522(b)(1), the property which may be exempted is limited to those kinds or types specifically stated within subsection (d). Section 522(b)(1) reads:

"(b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate *either*—

(1) *property that is specified* under subsection (d) of this section, unless the State law that is applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize; or . . ." 11 U.S.C.A. § 522(b)(1) (1979). Emphasis added.

The interpretation ascribed to the above quoted statutory language by the trustee is that only the property which is explicitly listed in § 522(d) may be exempted. According to the trustee, the failure of Congress to authorize expressly the property claimed by the debtors in these cases means specifically do not authorize or permit these kinds of property to be claimed as exempt. If the trustee is correct income tax refunds and wage holdbacks would not be exempt property. The intent of Congress, according to the trustee, and as evidenced by the choice of language in the statute, was not to extend the exemption beyond that which is specifically listed.

"The fact that sub-section (d)(5) states, other [sic] property, means that it would be in the nature of property which would normally be exempt from execution or attachment, under State Law." (Trustee's Brief, at 5).

This analysis, while it carries weight and is appealing in certain respects, fails to adequately explain certain express statements which are part of the legislative history of

§ 522. In the report accompanying H.R. 8200, the bill which was closest to the final version of the statute, it is stated, with reference to § 522:

> "Subsection (b), the operative subsection of this section, is a significant departure from present law. It permits an individual *debtor in a bankruptcy case a choice between exemption systems.* The debtor may choose the Federal exemptions prescribed in subsection (d) or he may choose the exemptions to which he is entitled under other Federal law and the law of the State of his domicile. . . . H.R. Rep.No.95–595, 95th Cong., 1st Sess., 360 (1977), U.S.Code Cong. & Admin.News 1978, p. 6316. Emphasis added.

In reference to § 522(d)(5) the House report continues:

> "Paragraph (5) permits the exemption of $500, plus any unused amount of the homestead exemption, in any property, in order not to discriminate against the non-homeowner." H.R.Rep.No.95–595, 95th Cong., 1st Sess., 361 (1977), U.S.Code Cong. & Admin.News 1978, p. 6317.

The argument of the trustee that the property referred to by § 522(d)(5) is that "which would normally be exempt . . . under State Law" is at odds with the Congressional statement that the debtor is permitted a *choice* between State and Federal bankruptcy exemptions. It is abundantly clear that the scheme laid out by Congress permits the debtor to State exemptions *or* Federal bankruptcy exemptions, but not both. While the debtor may choose one type of exemption over another, the debtor cannot mix-and-match State and Federal bankruptcy exemptions to enlarge upon what may be exempted under either.

■ "To choose" means to select or take by way of preference from two or more objects offered. Webster's New Int'l Dictionary, 475 (2nd ed. 1957). The crucial element to a choice is the existence of some difference between the various alternatives. The setting up of categories known as "State exemptions" and "Federal bankruptcy exemptions" makes such a distinction. The hypothesis of the trustee is that

§ 522(d)(5), one of the Federal bankruptcy exemptions, refers to "property which would normally be exempt . . . under State Law," eliminates any meaningful difference between these two systems of exemptions. As pointed out by the House Report, § 522(b) is a "significant departure from [the Bankruptcy Act of 1898]." H.R. Rep.No.95–595, 95th Cong., 1st Sess., 360 (1977). The departure from the old law is that a debtor has a choice between exemption systems.

The interpretation of the trustee with respect to § 522(d)(5) property conflicts with the legislative history on another point. The Michigan exemption statute, while making a provision for the homeowner known as the 'homestead exemption', is not as generous to the nonhomeowner as is the Federal Statute. If a Michigan resident owned no homestead property, but was a renter for example, the value of the $3,500 State homestead exemption would be lost to that resident. See Mich.Comp.L. Ann. § 600.6023(a)(8) (1968); Mich.Stat. Ann. § 27A.6023(a)(8) (1977). This is clearly contrary to the plainly stated Congressional intention of not "discriminat[ing] against the nonhomeowner." H.R.Rep.No. 95–595, 95th Cong., 1st Sess., 361 (1977). If the trustee's position with respect to non-homeowner debtors were followed, it would violate the Congressional intent of avoiding discrimination against nonhomeowners by allowing them the homestead exemption in "any property."

From the standpoint of semantics, the analysis offered by the trustee is unduly constrained. There are two key words which appear in § 522(b)(1) and (d)(5). These are "property" and "any". The word "any", according to Webster's, *supra* at 121, means

> "1. One indifferently out of a number; one (or, as *pl.*, some) indiscriminately of whatever kind; specif.: *a* Indicating a person, thing, event, etc., as not a particular or determinate individual of the given category but whichever one chance may select; . . . *b* Indicating a person, thing, etc., as one selected without

restriction or limitation of choice, with the implication that every one is open to selection without exception; . . .

A similar meaning for the word "any" is found in Black's Law Dictionary 86 (5th ed. 1979):

"Some, one out of many; an indefinite number. One indiscriminately of whatever kind or quantity . . . . Word 'any' has a diversity of meaning and may be employed to indicate 'all' or 'every' as well as 'some' or 'one' and its meaning in a given statute depends upon the context and subject matter of the statute . . ."

This is one instance where both the denotation and the connotation of the word are the same. Both the stated definition, and the implied meanings of the word "any" do not reveal the existence of limitation. To suggest that the use of the word "any" may mean less than an unlimited, unspecified number unnecessarily circumscribes the plain meaning of the word.

The other key word is "property." As to the word "property", Webster's *supra* at 1984 states the meaning as:

"The exclusive right to possess, enjoy, and dispose of, a thing; ownership; in a broad sense, any valuable right or interest considered primarily as a source or element of wealth, . . . that to which a person has legal title; thing owned; . . ."

■ According to Black's Law Dictionary, *supra* at 1095, "property" is

"[t]hat which is peculiar or proper to any person; that which belongs exclusively to one . . . . The word is also commonly used to denote everything which is the subject of ownership, corporeal or incorporeal, tangible or intangible, visible or invisible, real or personal; everything which has an exchangeable value or which goes to make up wealth or estate."

The defined meaning of "property" is very broad. The trustee's position is somewhat inconsistent as to what constitutes property. In arguing under 11 U.S.C.A.

§ 541 (1979) that tax refunds and wage holdbacks are part of the debtor's estate, the trustee urges that an all encompassing meaning be attached to the word "property" in the phrase "property of the estate." But with respect to "property" under § 522(d)(5), the trustee submits that a more limited meaning be given to the word in this context than would be attached in some other. No explanation has been offered as to why the same word should have different meanings.

The trustee has argued that the reference in § 522(b)(1) to the property "specified" in § 522(d) has the effect of limiting the exemptions to those types or kinds of property expressly stated in subsection (d). The trustee is apparently relying upon the maxim of statutory construction *expressio unius est exclusio alterius.* Tax refunds and wage holdbacks, not being expressly stated, cannot be included as exempt property.

The interpretation offered by the trustee burdens unduly the meaning suggested by the dictionary definition and common usage of the english language. As discussed above, the meaning asserted by the trustee is at odds with the accepted usage of these words. Further, this meaning urged by the trustee is contrary to direct statements of Congressional purpose found in the legislative history. The approach of the trustee herein unnecessarily limits the intent of Congress to preserve the property available to a debtor with which a fresh start can be made.

"Property," as modified by the words "of the estate" and the word "any' cannot have such radically different meanings. Either the broad meaning suggested in connection with § 541 is correct, or the definition urged in the context of § 522 should prevail. In light of the earlier discussion as to the scope of the property of the estate, the court is of the opinion, and will so hold, that the meaning of "any property" found in § 522(d)(5) is that which is literally found in the words: one, or some, of whatever kind of those items which are subject to ownership, whether it is tangible or intangible, visible or invisible, corporeal or incorporeal, real or personal.

*Extent to which exemption extends*

While all three of these cases present similar questions, there are factual distinctions between them. In one instance, the debtors own realty, but their equity in the property is less than the $7,500 exemption available to them. In another, no real estate is claimed on the B–4 Schedule. The rule which must be applied in each case is the same, however. Where there is no claim of a homestead exemption, the dollar value of the property which may be exempted under § 522(d)(5) cannot exceed a total or aggregate of $7,900. If there is a claim of any homestead exemption, the dollar amount which is available under § 522(d)(5) would be $7,900 less the amount claimed for the homestead exemption.

### Conclusion

The filing of a petition for relief under Title 11 of the United States Code operates to create an estate. § 541. This estate is composed of all property or property interests of the debtor. The estate includes income tax refunds and wage holdbacks, as well as the property not formerly so included.

 Under the scheme laid out by the Federal bankruptcy exemptions, it is possible for the debtor to retain ("exempt") a larger amount of property than was possible under the Bankruptcy Act of 1898. § 522(d). While not attempting to enumerate the various types of property which may be exempted by a debtor, which types are stated as "any property," it is clear to this court that subject to the stated statutory limits even income tax refunds wage withholdings and other cash or cash like assets may be exempted. § 522(d)(5).

The Code limits the property which may be exempted under § 522(d)(5) to an aggregate amount of $7,900. This $7,900 is comprised of the $400 stated in § 522(d)(5) and "homestead" exemption found in § 522(d)(1). If a homestead exemption is claimed to the full extent of the $7,500 allowed by statute, then there would only be $400 worth of exemption to apply to other ("any") property. If no homestead, or a lesser amount, is claimed, then the amount of "any property" which could be exempted would be increased accordingly. The guiding principal is that in whatever way the exemption is attempted to be claimed, under the combination of sections 522(d)(1) and (5) the total or aggregate amount under these two sections cannot be greater than $7,900.

An order will enter denying the complaint of the trustee in each of these cases. No costs to be awarded.